# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES CARSON,<br><br>Plaintiff,<br><br>v.<br><br>MATT WITT, in his personal capacity, and JOE MCGUINNESS, in his official capacity as Commissioner of the Indiana Department of Transportation,<br><br>Defendants. | CAUSE NO.: 1:17-CV-486-HAB |

## OPINION AND ORDER

Plaintiff Charles Carson worked for the Indiana Department of Transportation (INDOT) as a professional engineer from December 2006 until his termination on August 29, 2016. Plaintiff was over the age of sixty at the time of his termination and believes he was fired because of his age and in retaliation for filing a claim with the State Employees' Appeals Commission, wherein he alleged age discrimination and unwarranted discipline.

Citing the Equal Protection Clause of the Fourteenth Amendment via 42 U.S.C. § 1983, Plaintiff filed suit against his supervisor, Matt Witt, in his individual capacity for his participation in the termination. Plaintiff also sued Joe McGuinness in his official capacity as the Commissioner of INDOT, invoking the *Ex parte Young* exception to the State's sovereign immunity.

Defendants have moved for summary judgment on all counts of the Second Amended Complaint. Plaintiff opposes the motion, and this matter is ripe for the Court's consideration.

## STATEMENT OF FACTS

**A.     The Termination**

In late spring or early summer 2016, Plaintiff and his supervisor, Matt Witt, interviewed two candidates for an open Railroad Engineer position with INDOT. After the interviews, Plaintiff and Witt did not agree which candidate was the best fit for the position. Plaintiff wanted to hire Sarah Farlow, while Witt thought that Therin Schultz was the better candidate for the job. Witt believed that Farlow was better suited for a different department. Witt ultimately told Plaintiff that they could either hire Schultz or repost the position. Plaintiff acquiesced and Witt started the paperwork for the human resource department to begin the process of hiring Schultz. INDOT's hiring process requires that numerous steps be completed before a candidate is officially hired.

That evening, Witt received a call from an INDOT CAD Technician, Tohon Mink. Mink reported that Farlow had called him, upset that she had not received the job because she was the best, and only, qualified candidate. Farlow believed she had been discriminated against and was going to hire an attorney. Witt was confused as to how Farlow prematurely obtained knowledge about the selection process or formed any opinions about her qualifications relative to the other interviewee. However, Plaintiff was the only other person who had taken part in the interviews.

2

Mink and Farlow also exchanged text messages, which Mink showed to Witt. Witt consulted with his supervisor, Doug Burgess, who agreed the matter should be discussed with Ryan Tucker in human resources. Witt's deposition testimony is that he turned the matter over to Tucker and, other than seeking status updates from Tucker, had no further involvement until a decision was made to take disciplinary action against Plaintiff. According to Tucker's deposition testimony, Witt had numerous other meetings with Tucker to discuss the appropriate discipline for Plaintiff.

Witt maintains that he had not authorized anyone, including Plaintiff, to contact Farlow, and did not know that Plaintiff was going to call Farlow. Plaintiff, on the other hand, testified that Witt knew that he was going to call Farlow, and he was only following the same procedures he had on previous occasions. Plaintiff also testified that he limited his comments to advising Farlow that she was not selected for the position, INDOT may want to select her for a future position, she had a lot of good qualities that would be valuable, but they decided to go with a different candidate.

During Tucker's investigation, he received emails from Mink of the text exchanges. The text messages suggested that Plaintiff communicated his opinion that Farlow was clearly the most qualified candidate. Her statements included, "Apparently I was the only one that came prepared could answer all the question . . . Letters of recommendation … Met all the requirements…." and "Yea I guess Matt was really against me…i thought we were friends… Should've been an easy decision…i made it so they couldn't not hire me." (ECF No. 79-9) (ellipses in original).) The author of the texts also indicated that she was "fighting it . . . Feel like I have a pretty solid case." (*Id.*) (ellipses in original).) As the

3

emails of the text messages did not identify that they were from Farlow, Tucker called Farlow to inquire whether anyone from INDOT had called her about the position. She advised that Plaintiff had called her.

Tucker worked with or apprised various levels of INDOT personnel about Plaintiff's potential discipline, including personnel from employee relations, INDOT's legal department, and others up the chain of command. The final step was receiving the approval of the Deputy District Commission, Michael Smith.

Tucker drafted a termination letter, and Tucker and Witt met with Plaintiff on August 29, 2016, to deliver the letter. The letter stated:

> During the meeting held today (8/29/16), with the following persons in attendance: myself (Matt Witt), Ryan Tucker, and you (Charles Carson), we discussed recent findings of your conduct. After an investigation, it has been found that you willfully contacted a candidate with whom you were involved in a position interview, disclosed INDOT's decision-making process and opinions regarding that candidate's qualifications relative to that position, and also divulged subsequent unofficial and unapproved hiring decisions regarding that candidate. It was furthermore related to you that this conduct is in direct conflict with INDOT's best interests, fails to meet agency standards, and is ultimately unacceptable.

(ECF No. 79-1; ECF No. 85-1.) As a result of the findings, Plaintiff was advised that his employment with INDOT was terminated effective immediately. The letter was signed by Witt, Tucker, and Deputy District Commissioner Smith.

On September 20, 2016, Tucker prepared a "Carson Dismissal Overview." (ECF No. 79-2; ECF No. 85-4.) He explained that Plaintiff's supervisor overruled Plaintiff's chosen candidate for an open position. Plaintiff "then proceeded to, before final decision was made, officially approved by the appropriate chain of command, or any official announcement was made, to contact the candidate he wanted for the position, complaining to her of the overruling and that she was in fact the most qualified candidate

4

for the position of those interviewed." (*Id.*) The candidate informed her former co-workers at INDOT that she was pursuing legal action against INDOT based on Plaintiff's comments. "It was subsequently determined as a result of this investigation, and with the recommendation of Linda Jelks and Lynn Bucher, <u>that Mr. Carson's conduct of contacting the candidate and disclosing INDOT's decision making process and his opinions about her qualifications was in direct conflict with INDOT's best interests.</u>" (*Id.*) (emphasis in original).)

Tucker further explained:

> What is crucially important to point out however is the fact that per our disciplinary policy . . . Mr. Carson's pattern of unacceptable behavior and performance were aggravating factors that played a very large part in his ultimate dismissal. Furthermore, Mr. Carson was aware that, as evidenced in his 5-day suspension prior to his dismissal (resulting in a SEAC case), that his pattern of insubordinate behavior in ignoring specific directions was being closely monitored and further behavior of the same type may result in dismissal. Mr. Carson chose to continue with this behavior, which played another large part in his dismissal.

(*Id.*)

**B. Previous Disciplinary Action**

On November 5, 2014, Plaintiff was issued a Work Improvement Plan/Notice of Substandard Performance by Witt's predecessor. The identified performance deficiency related to Plaintiff's communication skills and level of professionalism. According to the Notice, during an October 2014 training meeting, Plaintiff "acted in a manner that was disruptive and argumentative," negatively impacting "teamwork." (ECF No. 79-3.) The Notice referenced a July 2011 Memorandum of Counseling that Plaintiff had received for "failure to maintain satisfactory, effective working relationships with the public or other

5

employees." (*Id.*) Despite meeting with Plaintiff to discuss concerns over his interactions with others, Plaintiff had "continued to show lack of cooperation, a failure to communicate his ideas/concerns appropriately and this lack of professionalism will not be tolerated in the future." (*Id.*)

On May 27, 2015, Plaintiff received a five-day suspension. His supervisor, Burgess, documented that Plaintiff "exhibited insubordinate behavior on May 1, 2015, when he provided incorrect RR Certification letters for 15 projects associated with the April 29, 2015 RFC Submittal. He also ignored specific direction from his supervisor to sign approved documents as 'certified.'" (ECF No. 79-4.) Burgess wrote that these actions disrupted the work of his team and jeopardized the contracts.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Although facts and reasonable inferences are construed in favor of the nonmoving party, this does not extend to inferences supported only by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

**DISCUSSION**

Plaintiff asserts that a jury must resolve several genuinely disputed material facts. Plaintiff notes the conflicting testimony about whether Witt was aware that Plaintiff was going to contact Farlow to inform her that she had not been selected. He also submits that the identity of the ultimate decision-maker remains unknown because there is conflicting testimony regarding who was involved or who ultimately decided that termination was the appropriate discipline. Plaintiff also contends that the evidence, viewed in his favor, shows that INDOT did not establish that he divulged any inappropriate information to Farlow when he called her.

**A.      Retaliation**

Plaintiff alleges that his termination was in retaliation for filing a claim with the State Employees' Appeals Commission (SEAC) in August 2015 to dispute the validity of an imposed five-day suspension. According to his Second Amended Complaint allegations, the SEAC claim included allegations of age discrimination.

Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, "authorizes suits to enforce individual rights under federal statutes as well as the Constitution" against state and local government officials. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 119 (2005). Section 1983 does not create substantive rights; it operates as "a means for vindicating federal rights conferred elsewhere." *Padula v. Leimbach*, 656 F.3d 595, 600 (7th Cir. 2011) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997)). Plaintiff asserts that the rights at issue in this case are those protected by the Equal Protection Clause of the Fourteen Amendment, which creates "a right to be free from

invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322 (1980).

Retaliation is not a cognizable § 1983 equal protection claim. *See Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004) (holding that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause") (first citing *Grossbaum v. Indianapolis–Marion Cty. Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996); then citing *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989); and then citing *Vukadinovich v. Bartels*, 853 F.2d 1387, 1391–92 (7th Cir. 1988)); *see also Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 418-19 (7th Cir. 1988) (explaining that "retaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on the grounds of sex").

Because the Equal Protection Clause does not create a right to be free from retaliation, the Court will grant summary judgment in favor of the Defendants and against Plaintiff on Counts III and IV of the Second Amended Complaint.

**B. Age Discrimination**

"In § 1983 cases, 'the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment.'" *Padula*, 656 F.3d at 600 (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)). Equal protection violations, asserted through § 1983, require that a plaintiff show that (1) defendants discriminated against him based on his membership in a definable class and (2) the defendants acted with a "nefarious discriminatory purpose." *Nabozny v. Podlesny*, 92 F.3d

8

446, 453 (7th Cir. 1996). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Id.* (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). Additionally, government officials sued for constitutional violations under § 1983 are liable only for their own misconduct. *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015).

Plaintiff must present evidence from which a jury could conclude that Witt had specific intent to discriminate against Plaintiff because of his age. *See id.* (noting that for "discrimination claims . . . where the state of mind of purposeful discrimination is an element of the violation, a supervisor is liable only if she had the specific intent to discriminate"). One of the material issues of fact that Plaintiff identifies is who made the decision to terminate Plaintiff's employment. He submits that this issue must be submitted to a jury.

Witt is the only individual Plaintiff has sued in his personal capacity. Therefore, what matters is whether there is evidence from which a jury could conclude that Witt had adequate personal involvement in the adverse decision. It is undisputed that Witt initiated the investigation into Plaintiff's conduct. Although Tucker took the lead, Witt had discussion with Tucker and agreed with the ultimate resolution. Witt was Plaintiff's direct supervisor. The Court assumes, for purposes of summary judgment, that Witt's role would satisfy § 1983's own misconduct requirement.

9

As Plaintiff himself notes, the fundamental question at the summary judgment stage is whether a reasonable jury could find that Plaintiff's status in a protected category caused the adverse employment action. (Pl.'s Resp. 9, ECF No. 84 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). However, Plaintiff then proceeds to make scarce mention of age, or to explain on what grounds a jury could find that Plaintiff's age factored into Witt's decision.[1] Plaintiff does no rely on the burden shifting method. That is, he has not attempted to show: "that he 'is a member of a protected class,' that he 'is otherwise similarly situated to members of the unprotected class,' and that he 'was treated differently from members of the unprotected class.'" *McNabola v. Chi. Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (quoting *McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). Plaintiff argues that he need not identify similarly situated younger employees who received more favorable treatment. Rather, he asserts, the Court may look to the totality of evidence, including suspicious timing, ambiguous statements, treatment of similarly situated employees outside the protected class, and evidence that the employer's stated reason is pretextual. This is an accurate statement of law. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014)). However, the totality of any such evidence pointing to a discriminatory motive is lacking in this case.

As stated already, Plaintiff does not present any evidence that Witt treated him differently than he treated younger employees. Neither does Plaintiff point to any

---

[1] This is due, in part, because Plaintiff elected to analyze the claims of age discrimination and retaliation together because they "are so closely intertwined in this matter." (Pl.'s Resp. 10, ECF No. 84.)

statements by Witt or other decision-makers that would suggest age played a role in the decision to terminate his employment. For his part, Plaintiff has offered only speculation and conjecture regarding Witt's motives.

> Q. What's the invidious motive here?
> A. To get somebody younger that he can brow beat into making illegal or any type of, perform any type of action desired.
>
> ***
>
> Q. Why do you think that about Mr. Witt?
> A. I would have to think about it a bit.

(Pl.s' Dep. 97, ECF No. 79-5.)

> Q. As we sit here today, do you have any knowledge of any request by Mr. Witt of any INDOT employee to do something false or dishonest?
> A. I'd have to think about it, but I would say offhand, not to my immediate recollection, no.
> Q. Okay. Has he ever made any comments that suggest that he wants to hire younger rather than older employees?
> A. Not to my recollection.

(*Id.* at 98.)

> Q. Why do you believe that Mr. Witt cares at all about your age?
> A. I would have to think about it. Again, back to that.
> Q. Have you uncovered any evidence in this lawsuit that suggests that Mr. Witt was motivated by age?
> A. I haven't done any exploratory—I guess I'm not following. What, you're saying I'm supposed to hire a private investigator against Mr. Witt or something? I'm not sure.
> Q. Have you seen anything anywhere in your life that would suggest Mr. Witt wanted to fire you because of your age?
> A. Mr. Witt is somewhat of a character. And he used to come in with confederate flags on his vehicle and all sorts of not strictly appropriate types of actions. Yeah.
> Q. But did any of those things have to do with age?
> A. Not that I can recall specifically at this time.
> Q. Okay. So you believe that he was motivated by age?
> A. Yes.

11

> Q. Why do you believe this?
> A. Because I was significantly older than him, I had more knowledge of the area, the department, the rules, the regulations than he does.
> Q. Is that something that is a negative?
> A. Depends on who you are.
> Q. Is it a negative for Mr. Witt?
> A. Depends on how he sees it. That's in Mr. Witt's head.
> Q. Why do you believe that your experience and knowledge would be viewed, which I take it is a proxy for age in your opinion?
> A. In one way, yes.
> Q. Why do you believe that this is a negative thing to him?
> A. It doesn't allow him to tell me to do things illegally.
> Q. Had he ever tried to tell you to do things illegally?
> A. No.

(Pl.'s Dep. 100–01.) After this exchange, Plaintiff explained what measures INDOT took to make sure employees were not providing information to individuals outside the organization, as such activity could be considered illegal. When asked why, in light of those measures, Plaintiff thought Witt "would have ever directed you to do something illegal or dishonest," Plaintiff answered, "I don't think he would." (*Id.* at 103.) The follow-up questions continued:

> Q. So why would he view your knowledge of the law as being a negative thing?
> A. Oh, because that reduces his span of control.
> Q. In what regard?
> A. If he — he can't tell me to do something illegal because he knows damn well I'm not going to do it based on prior actions.

(*Id.* at 104.) Plaintiff based this statement on his belief that others at INDOT might, at some point, tell Witt to do something that Plaintiff would not want to do. In conclusion, Plaintiff admitted that he could not articulate any reason for his belief that Witt cared at all about Plaintiff's age. (*Id.* at 108.)

"[C]onjecture or speculation regarding the employer's motives cannot be used to defeat a summary judgment motion." *Abioye v. Sundstrand Corp.*, 164 F.3d 364, 368 (7th Cir. 1998); *see also O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir.2001) ("statements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to an inquiry of discrimination"); *Jordan v. Summers*, 205 F.3d 337, 343–44 (7th Cir.2000) ("without supporting facts or explanatory details, this 'perception' is merely speculation regarding [the employer's] motives and cannot defeat summary judgment"). The centerpiece of Plaintiff's speculation is his belief that his age would prohibit Witt from asking him to do things illegally, so he wanted to get a younger employee in Plaintiff's position. However, he admits that Witt never asked him to do anything illegal, and that he could not say whether Witt viewed Plaintiff's knowledge and experience as a negative because that was "in Mr. Witt's head." In other words, Plaintiff has offered nothing more than uncorroborated testimony about Witt's state of mind. Additionally, there is no evidence that Plaintiff was replaced with a younger employee—a key component of Plaintiff's theory of why Witt would target him for termination.

Plaintiff also testified to the issue of pretext.

Q. Is there any other reason, other than you disbelieve the things that you have been told about the reasons for your suspension and the reason for your termination, that you believe that it's age?
A. No.
Q. And you disbelieve the termination reason because you think you had told Mr. Witt that you were going to do this in advance, and he says nothing?
A. Correct.

13

(*Id.* at 112.) Consistent with this testimony, other than attacking the legitimacy of INDOT's stated reason for his termination, Plaintiff has not proffered any evidence tending to show that his age motivated the employment decision. The Court finds that the evidence Plaintiff designates in support of his argument that his termination was pretextual would not permit a jury to conclude that it is more likely than not that Witt's selected course of action was motivated by Plaintiff's age.

Plaintiff first contends that INDOT did not articulate a specific policy that he violated, particularly where he only told Farlow that she had not been selected for the position, similar to what he had communicated on previous occasions to other applicants with the knowledge of his supervisor. He contends that Witt was aware that he intended to call Farlow. Additionally, he faults INDOT's investigation, stating that no one ever confirmed what he told Farlow when he contacted her.

To show pretext, plaintiff "must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge." *Id.* "[I]t is not 'the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.'" *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) (quoting *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 471 (7th Cir. 2000)). "To meet this burden, [plaintiff] must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [defendant's] asserted

reason[s] 'that a reasonable person could find [them] unworthy of credence.'" *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).

That INDOT could have done more to investigate what Plaintiff told Farlow goes to the potential correctness of the decision, not to INDOT's honestly held beliefs about Plaintiff's actions. Plaintiff presents no reason why those investigating his conduct were not entitled to believe that the text messages suggested that he told Farlow more than is represented by his side of the story (assuming that he had authority to call her in the first place). Witt was aware that, soon after his conversation with Plaintiff about not selecting Farlow, Farlow called another INDOT employee, Mink, and was upset that she did not get the position because she was the most qualified. Further Farlow believed she had grounds to sue INDOT. Mink also had text messages from Farlow on his phone, which he showed to Witt. The messages were passed along to Tucker.

The wording of the texts corroborated what Mink told Witt. They revealed that Farlow believed, from what she had been told, that she was the only qualified candidate and that the only reason she was not selected was because Witt did not want to hire her. Tucker later confirmed with Farlow that Plaintiff was the INDOT employee who informed her that she had not been selected. Plaintiff has not shown that Tucker and Witt did not actually rely on this information, as well as Plaintiff's history of discipline, in making the decision to terminate Plaintiff's employment.

Tucker and Witt may have been mistaken as to the nature of Plaintiff's communication with Farlow. In addition, Witt may have provided Plaintiff with reason

to believe that he had Witt's permission to contact Farlow. But pretext is not shown merely by demonstrating that the employer erred or exercised poor business judgment; instead the plaintiff must establish that the employer did not believe the reasons it gave for the adverse employment action. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000). Thus, the only question asked is whether the Defendant had a legitimate, nondiscriminatory reason for firing the Plaintiff, not whether it made the correct decision. *Naik*, 627 F.3d at 601 (citing *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.")). The Court does "not sit as a 'super-personnel department,' weighing the wisdom of a company's employment decisions; rather, [it is] concerned only with whether the employer's proffered explanation was honest." *O'Regan*, 246 F.3d at 984.

Having considered the evidence as a whole, the Court finds that Plaintiff has not presented evidence from which a jury could conclude that, more likely than not, his termination would not have occurred if he had been younger. A reasonable jury could not conclude that Witt singled the Plaintiff out for termination due to his age. Accordingly, Defendants are entitled to judgment as a matter of law on Counts I and II of the Second Amended Complaint.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment [ECF No. 77]. The Clerk will enter judgment in favor of Defendants and against Plaintiff.

SO ORDERED on March 9, 2020.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT